**KETCH v. SU–NI OIL & ROYALTY CO.**
**et al.**

**No. 4593.**

Court of Civil Appeals of Texas. Texarkana.
March 14, 1935.

Mayfield & Grisham, of Tyler, for appellant.

Pace & Goens, of Tyler, for appellees.

JOHNSON, Chief Justice.

On or about June 1, 1931, Lawrence B. Ketch owned the seven-eighths oil and gas leasehold interest in 1.55, acres of land in Smith county, one-fourth of which leasehold was subject to what is termed an oil payment to the amount of $10,000 due one I. Rudman out of the first oil runs. On or about said date, Lawrence B. Ketch conveyed to Stanley Lewis a one-eighth interest in said seven-eighths leasehold, and conveyed to Robert H. Breeden a one-eighth interest in said seven-eighths leasehold, in consideration of commissions due said Lewis and Breeden for locating a party able and willing to advance money with which to drill a well on the leasehold. Each of said one-eighth of seven-eighths interest so conveyed to Lewis and Breeden was subject to oil payments of $2,-500 each to be paid out of the first oil runs from said interests as and in full satisfaction of the charges to be made against said interests for costs of drilling and equipping the well. The well was to be drilled and equipped at the expense of the said Lawrence B. Ketch, who was to be reimbursed by said oil payments against said interest so conveyed to Lewis and Breeden. It appears that Mrs. Kate Maxfield was the person located by said Lewis and Breeden to furnish the funds with which to drill the well. Ketch conveyed to Mrs. Maxfield a one-fourth interest in the said seven-eighths leasehold in consideration of $7,500 cash. It appears that Mrs. Maxfield was also to be rebated or reimbursed by Ketch with an oil payment of $2,500. The Maxfield one-fourth interest was transferred to the Su-Ni Oil & Royalty Company. Ketch employed the English Drilling Company to drill the well for a consideration of $10,000, part of which was paid in cash, and $6,500 to be paid out of the first oil runs from one-fourth of the seven-eighths leasehold. The well was completed and brought in as a producer about June 26, 1931. Ketch contracted numerous other debts for labor, supplies, and material in equipping the well, some of which indebtedness was secured by laborer's and materialman's liens, and some of it stood as open accounts. Ketch contends that he had made arrangements with his creditors to accept proportional payments from the oil runs until such indebtedness was satisfied. A power of attorney was executed to Stanley Lewis and to Frank Ketch, father of Lawrence B. Ketch, to act as trustees in operating the well and in making distribution of the proceeds from the oil. The well was operated under this trusteeship, and the proceeds being distributed proportionately to the creditors until on or about February 15, 1932, when Stanley Lewis refused to sign a check to Frick-Reid Supply Corporation for its proportionate amount of the proceeds on hand being distributed to the creditors at that time. Lewis contends that his reason for such refusal was that the leaseholders owed some gross production tax. Frick-Reid Supply Corporation immediately filed suit upon its account, claiming that it had a materialman's lien on all of the leasehold, sought to foreclose its alleged materialman's lien, and at the time of filing its petition applied for and obtained a receivership upon all the property, which receiver operated the property until he was discharged April 21, 1932, on application of the appellees who thereupon took possession of the property, released to them by discharge of the receiver. At that time, appellees, Su-Ni Oil & Royalty Company, Stanley Lewis, and Robert H. Breeden, filed their answer and cross-action in the case, alleging, in effect, that they had purchased the indebtedness remaining unpaid which had been incurred by Lawrence B. Ketch in drilling and equipping the well, some of which, they alleged, was secured by laborer's and materialman's liens and some of which was open accounts. Appellees, it appears, continued to operate the well to and were operating it at the time of the trial. It appears that the well is capable of producing great quantities of oil. In their answer and cross-action appellees further alleged that they had been at considerable traveling expenses and hotel bills in contracting the several creditors in addition to the amount paid such creditors for their debts. The petition does not allege the amounts paid for each debt, but alleges that a valuable con-

sideration was paid for each, and seeks to recover the full amount of each debt, and to have decreed by the court and foreclosed a lien in favor of appellees against the interest of appellant, Lawrence B. Ketch, for all the indebtedness mentioned, including the further indebtedness of expenses for operating the well, and for gross production tax due the state of Texas.

Lawrence B. Ketch answered and alleged that appellant and appellees were mining partners in the enterprise; sought to have an accounting between himself and appellees, contending that his alleged partners had voluntarily paid off the indebtedness, and were not entitled to a lien against his interest therefor, and specially contending that they were not entitled to be reimbursed further than the amounts actually paid the creditors; that his alleged partners and their interest in the property were liable for a portion of said indebtedness, and that the interest of Lewis and Breeden was primarily liable for said indebtedness to the amount of $5,000 oil payment mentioned above; and further contending that no lien existed against the property for the open accounts purchased by appellees, and that he was not liable for the cost of the receivership proceedings.

The alleged partnership was denied by appellees.

As a summary it may be said that the suit involves an accounting without an audit between persons and corporations separately owning undivided interests in the seven-eighths leasehold interest in 1.55 acres of land against which leasehold there are divers laborer's and materialman's liens, and accounts incurred in the drilling and operation of an oil well thereon, and the division between them of the proceeds of oil produced therefrom, and of the proportionate liability of such owners and their undivided interests for the payment of debts claimed by some and disputed by others to be against the whole seven-eighths leasehold. The property appears to have been and is now producing oil in considerable quantities, and has at different times been under the management and control of a trusteeship, a receivership, and of the individual members of the alleged mining partnership.

Trial before the court without a jury resulted in judgment in favor of appellees and against appellant, Lawrence B. Ketch, for all the indebtedness amounting to $8,924.56, including the gross production tax and the operating cost of the well, and all costs of receivership, and decreeing and ordering foreclosed a lien upon the undivided interest of appellant in the property in satisfaction of the judgment.

By appropriate assignment of error appellant contends that the case should be reversed because the trial judge failed after seasonable demands made therefor to file his findings of fact and conclusions of law upon which the judgment is based. Appellant made proper demands in writing of the trial judge in accordance with the provision of article 2247, R. S. as amended by 42d Legislature, chapter 76, § 1, p. 118 (Vernon's Ann. Civ. St. art. 2247) requesting him to file his findings of fact and conclusions of law in the case. It appears that the trial judge considered the request and entered an order of record approving and granting the demand therefor, but failed to prepare and file any findings of fact and conclusions of law, though his omission to do so was duly called to his attention as required by the statute.

 It is the contention of appellees that reversible error is not shown by reason of the failure of the trial judge to prepare and file his findings of fact and conclusions of law, since the record is accompanied by an approved statement of facts introduced in evidence upon the trial of the case. The rule is that a statement of facts accompanying the record does not deprive appellant of his statutory right to have filed the findings of fact and conclusions of law of the trial judge upon which the judgment is based, unless it shall appear from such statement of facts or from the record that he has not been injured by such denial. Galveston, H. & S. A. R. Co. v. Stewart & Threadgill (Tex. Com. App.) 257 S. W. 526; Waring v. Waring (Tex. Civ. App.) 43 S.W.(2d) 611. Appellant complains especially that in order to properly present his case to this court he is entitled to know the findings of the trial court upon the controverted issues of whether or not the parties were mining partners, and whether or not it was the arbitrary conduct of appellee Stanley Lewis that caused the property to be placed in the hands of a receiver, the cost of which was charged against appellant.

We have carefully read and considered the statement of facts and the record, and have concluded that it does not show that appellant has suffered no injury from the denial of his right as declared by the statute and authorities above cited.

The judgment of the trial court will be reversed, and the cause remanded.